ALASKAN AIRWAYS, Inc., v. WIEN.

No. 3274.

Fourth Division.

Feb. 24, 1930.

**180**

188

190

John A. Clark and Charles E. Taylor, both of Fairbanks, for plaintiff.

Harry E. Pratt and Louis K. Pratt, both of Fairbanks, for defendant.

CLEGG, District Judge.

It will be observed from the foregoing that no formal answer has been filed by the defendant; that the complaint and supporting affidavit by Thompson is wholly undenied and uncontradicted by defendant's affidavit entitled "Resistance to Motion to Show Cause"; that the contract sued upon is not attacked as to the competency of parties, execution, consideration, terms, and language, nor assailed for fraud, coercion, mistake, or undue influence, or that the subject of the contract is not lawful; that the attempted defense in defendant's affidavit entitled "Resistance to Motion to Show Cause" might be set up as a defense to the main action and become one of the ultimate issues in the case on trial; and that it falls far short in its allegations of fact to challenge the attention of a court of equity in the face of the rights and equities existing on behalf of the plaintiff from the allegations of the complaint and supporting affidavit. The entire resistance attempts to set up new and collateral facts in no way suggested or inspired by plaintiff's showing, which undeniably entitles plaintiff to the relief now sought.

It is the contention of the defendant in his showing, in substance, as follows: That on the 6th day of August, 1929, when the contract sued upon was executed, the plaintiff, being a foreign corporation, did not file a copy of its charter, articles of incorporation, financial statement, and designation of an agent upon whom service of process in Alaska might be made in the office of the clerk of the District Court of the Fourth Judicial Division of Alaska until the 12th day of September, 1929; that the office of said plaintiff and the principal place of its business in Alaska was the town of Fairbanks, Alaska; that it did not file its charter or articles of incorporation, financial statement, and designation of agent in the office of the auditor of the territory until the 22d day of October, 1929; that it did not pay the statutory corporation tax and other fees required by the laws of the territory until the 22d day of October, 1929; and that between the 1st day of August,

1929, and the 6th day of August, 1929, " * * * the plaintiff was engaged as a common carrier in doing an airplane business transporting passengers and freight by air from one point to another within the Territory of Alaska and said plaintiff continued at all times after the 1st day of August, 1929, to do a general airplane business transporting passengers and freight in Territorial and foreign commerce; that at all times after the 1st day of August, 1929, the said plaintiff held itself out to the general public as being a common carrier in the business of transporting passengers and freight by air from point to point in Alaska and to and from points in foreign countries and Alaska and during said period, from August 1st to August 6th, 1929, did in fact as a common carrier transport passengers and freight for hire from point to point within the Territory of Alaska, and did in fact do a general transportation business by airplanes within the Territory of Alaska, between the 1st and 6th days of August, 1929, and at all times thereafter."

■ These allegations must stand the test to which oral testimony would be subjected, and, examining them with reference to the filing of documents required by the law, the court accepts judicially as a fact that the plaintiff did not file a copy of its charter, articles of incorporation, financial statement, or its designation of an agent on whom process might be served in the office of the clerk of the District Court of the Fourth Division of Alaska until the 12th day of September, 1929; but the court cannot accept, even if uncontradicted, the statement that the plaintiff did not file a copy of its charter, or articles of incorporation, or financial statement, or designation of agent in the office of the auditor of the territory of Alaska until the 22d day of October, 1929, nor the statement that plaintiff paid the corporation tax and other fees required by law of foreign corporations doing business in Alaska only upon the 22d day of October, 1929. This is not even secondary, but, at most, hearsay testimony.

▇▇▇▇▇▇▇▇▇▇▇▇

Section 1872 of the Compiled Laws of Alaska provides as follows: "Sec. 1872. A judicial, legislative, or executive record of said District, or of any State or Territory of the United States, or of any foreign country, or of any political subdivision of either, may be proved by the production of the original, or by a copy thereof, certified by the clerk or other person having the legal custody thereof, with the seal of the court or the official seal of such person·affixed thereto, if it or he have a seal, or otherwise authenticated as required by sections nine hundred and five, nine hundred and six, and nine hundred and seven of the Revised Statutes of the United States."

Without quoting them, sections 654, 655, 657, and section 660, as amended by chapter 32 of the Session Laws of Alaska 1923, contain a statement of the law governing foreign corporations doing business in Alaska, and the latter section as amended prescribes the penalty for noncompliance therewith, saying, in effect, that all contracts made by a noncomplying corporation·or company with residents of the territory which are made in the territory shall be void as to the corporation or company, and .no court of the territory shall enforce the same in favor. of the corporation or company. It is contended that the plaintiff company failed in complying with the prescribed laws in this regard, and that therefore the contract sued upon, which it is admitted was made in the territory with a resident of the territory, is void.

▇▇▇ On this preliminary hearing, even if the best evidence were presented showing, or tending to show, that the contract sued upon was void under these sections and the facts, the court will not now enter into a consideration or determination of this question which may become one of the final issues in the case, especially where the same is not tendered to the court by a formal answer verified as required by law. The court will be content to preserve the status of the parties as fixed by the terms of the contract pending a final hearing on the merits.

The rules by which the court and parties will now be governed may be briefly stated:

"As a general rule, where an injury committed by one against another is continuous or is being constantly repeated, so that complainant's remedy at law requires the bringing of successive actions, that remedy is inadequate and the injury will be prevented by injunction." 32 C.J. § 36, p. 56.

"An injunction pendente lite should not usurp the place of a final decree neither should it reach out any further than is absolutely necessary to protect the rights and property of the petitioner from injuries which are not only irreparable, but which must be expected before the suit can be heard on its merits. Only those issues will be determined which are necessary factors in granting or denying a temporary restraining order. It is not necessary that the complainant's rights be clearly established, or that the court find complainant is entitled to prevail on the final hearing. It is sufficient if it appears that there is a real and substantial question between the parties, proper to be investigated in a court of equity, and in order to prevent irremedial injury to the complainant, before his claims can be investigated, it is necessary to prohibit any change in the conditions and relations of the property and of the parties during the litigation."

The latter statement is by District Judge Farrington in the case of Goldfield Consol. Mines Co. v. Goldfield Miners' Union No. 220 et al. (C.C.) 159 F. 500, 511, 512, citing 22 Cyc. 822; 6 Pomeroy's Eq.Juris. 621; Harriman v. Northern Securities Co. (C.C.) 132 F. 464, 485.

Spelling on Injunctions (2d Ed.) vol. 1, p. 13, states the rule as follows: "It is a rule of courts in issuing a temporary injunction, that they will in no manner anticipate the ultimate result of the questions of right involved. It is sufficient, for the purpose of granting the writ, that a case has been made out warranting interference for the preservation of the property or rights in issue in statu quo, un-

til final hearing upon the merits. It is neither usual nor necessary, at this stage of the proceedings, to express or even to have the means of forming an opinion on the merits of the principal matter at issue; nor, generally, does it defeat the rights acquired under an interlocutory injunction that complainant should not prevail upon the trial of the merits, or should fail to present such a case as will entitle him to a perpetual injunction upon the final hearing. He may be entitled to temporary relief, although his right to the relief prayed may ultimately fail."

Further, at section 487, p. 412, this author again says: "One of the most frequent cases calling for preventive relief is where parties seek to restrain the violation of provisions in contracts for not engaging in a particular kind of business, or not setting up in business * * *. Such provisions are designated by the general term of negative stipulations, and will be enforced by injunction when reasonable and not in illegal restraint of trade."

High on Injunctions (2d Ed.) vol. 1, § 8, p. 8, states the rule as follows: "Where, however, the parties are at issue upon a question of legal right and it is necessary to preserve their rights in statu quo until the determination of the controversy, an interlocutory injunction may properly be allowed. In such cases courts of equity do not assume jurisdiction to dispose of the legal rights in controversy, but confine themselves to protecting those rights as they then are, pending an adjudication upon the legal questions involved."

Section 5, p. 5, of the same work, reads: "It is to be constantly borne in mind that in granting temporary relief by interlocutory injunction, courts of equity in no manner anticipate the ultimate determination of the questions of right involved. They merely recognize that a sufficient case has been made out to warrant the preservation of the property or rights in issue in statu quo until a hearing upon the merits, without expressing, and indeed without having the means of forming an opinion as to such rights. And in

order to sustain an injunction for the protection of property pendente lite it is not necessary to decide in favor of complainant upon the merits, nor is it necessary that he should present such a case as will certainly entitle him to a decree upon the final hearing, since he may be entitled to an interlocutory injunction, although his right to the relief prayed may ultimately fail."

Examining the statements in defendant's showing of resistance to the motion with reference to plaintiff's alleged engaging in business in Alaska prior to the 6th day of August, 1929, and subsequent thereto up to the 22d day of October, 1929, which are seriously claimed to be admitted by the plaintiff, there is found not a single fact alleged by defendant on the subject that the plaintiff did so engage in business within the meaning of the provisions of our statute heretofore cited prescribing the requirements to be followed by foreign corporations doing business in Alaska. It is said that the plaintiff "engaged as a common carrier in doing an airplane business transporting passengers and freight by air from one point to another," and so on.

This is a mere conclusion, and states no fact enabling the court to say what specific alleged act or acts of the plaintiff justifies the conclusion that the plaintiff at any time was doing business anywhere in the territory within the meaning of the applicable statutes. What particular act did plaintiff do? Whom did plaintiff transport by air for hire and when? Where did such alleged transportation take place? What alleged freight was carried and when and where? What were the terms of such alleged contracts of hiring? Was anything of value paid by anybody for the alleged services and when? Did the plaintiff authorize such transportation?

It is further said that the plaintiff "held itself out to the general public as being a common carrier in the business of transporting passengers and freight by air from point to point in Alaska," and the court asks similar questions with reference to this conclusion of law.

It is further said that the plaintiff "did in fact as a common carrier transport passengers and freight for hire." Did the plaintiff transport the passengers and freight by airplanes or otherwise?

It is further said that the plaintiff "did in fact do a general transportation business by airplanes within the Territory of Alaska, between the 1st and 6th days of August, 1929, and at all times thereafter." What did the plaintiff do? What acts did plaintiff commit in violation of the provisions of existing law?

Leaving this phase of defendant's showing, it is further alleged, in substance and effect, that the plaintiff not only entered into the contract sued upon, but also other contracts with the following companies: Bennett-Rodebaugh Airplane Company and Anchorage Air Transport Incorporated. It is alleged that such contracts with these companies and their stockholders were " * * * to the same effect and purpose as that entered into with Wien Alaska Airways Incorporated which is set forth in plaintiff's complaint * * * with the exception of the necessary change of names and the dates."

Who is it who assumes to say that these other contracts were to the same effect and purpose as the contract involved in this suit and that they were identical with the contract involved in this suit? Is the court to take the statement of an airplane pilot or mechanic or sometimes manager of an airplane corporation, who is also the defendant in this suit, as to the character of these alleged other and undisclosed contracts, as to their purpose and effect, and as to the fact that they are, or either of them is, identical with the contract in this suit?

■ The court now will cease discussing contentions so unfounded and extravagant and claims so preposterous and will conclude by saying that, if ever again mature and experienced attorneys inveigle this court into witnessing and deciding a sham battle of this character laid on fictitious lines while the court is engaged in other more exacting du-

ties, the court will be compelled to deal summarily with them and each of them.

Motion is granted, but it will be limited to restraining the defendant from entering into competition in any way with the plaintiff in the conduct of its airplane business in the Second, Third, and Fourth Judicial Divisions of Alaska, and from entering into any business that will conflict in any way with the plaintiff in the conduct of its airplane business in said divisions of Alaska, and from becoming interested in any company or copartnership engaged in said divisions in the airplane business, and from accepting employment with any airplane company, corporation, or association, except the plaintiff company, as pilot, mechanic, or manager, in said divisions of Alaska, and such restraints and injunctions against the defendant shall continue until the final determination of this action, and become operative upon the filing of the statutory undertaking in the sum of $1,200, approved by the court.